```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

DAN FLOURNOY,                     §
                                  §
          Plaintiff,              §
                                  §
v.                                §
                                  §   CIVIL ACTION NO. H-09-3894
CAMPBELL CONCRETE & MATERIALS,    §
LLC f/k/a CAMPBELL CONCRETE &     §
MATERIALS, LP,                    §
                                  §
          Defendant.              §
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Dan Flournoy, brings this action against his former employer, Campbell Concrete & Materials, LLC, for race discrimination in violation of 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Pending before the court is Defendant's Motion for Summary Judgment (Docket Entry No. 21), and Defendant's Objections to Plaintiff's Summary Judgment Evidence (Docket Entry No. 31). For the reasons explained below, Defendant's Motion for Summary Judgment will be granted, and Defendant's Objections to Plaintiff's Summary Judgment Evidence will be declared moot.

### I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Id.

## II. Undisputed Facts

Flournoy is an African-American.[1] Campbell is a company that owns concrete plants where dry ingredients are mixed and then delivered to customers as wet concrete. In February of 2005

---

[1] Affidavit of Dan Flournoy (Flournoy Affidavit), Exhibit A to Plaintiff Dan Flournoy's Response to Defendant's Motion for Summary Judgment (Flournoy's Response), Docket Entry No. 27, ¶ 3.

Campbell hired Flournoy to work as a driver. On February 16, 2005, Flournoy signed a "Statement of Receipt of Employee Handbook."[2] Campbell's Employee Handbook contains an Anti-Workplace Violence provision.[3] In 2008 Campbell's Vice-President of Operations, Phillip Baker, promoted Flournoy to the position of assistant plant manager at the Arcola plant.[4] Flournoy's direct supervisor at the Arcola plant was Teddy Wolf, who is Caucasian.[5] Wolf's direct supervisor was Boyd Gipson, who is also Caucasian.[6] On January 7, 2008, an altercation occurred at the Arcola plant that involved Flournoy, Wolf, and Phillip Comeaux, a Campbell driver, who like Flournoy is African-American.[7] Campbell terminated Flournoy and Comeaux but did not terminate Wolf.[8]

**A. Altercation**

Some facts about the altercation are disputed, but the following facts are not disputed: (1) the altercation began as a

---

[2] Exhibit A-1 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[3] Campbell Concrete & Materials, L.P. Employee Manual, Exhibit E-6 to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 7-8.

[4] Oral and Videotaped Deposition of Dan Flournoy (Flournoy Deposition), Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 132 and 176. <u>See also</u> Flournoy Affidavit, Exhibit A to Flournoy's Response, Docket Entry No. 27, ¶ 14.

[5] <u>Id.</u> at 97.

[6] <u>Id.</u>

[7] Flournoy Affidavit, Exhibit A to Flournoy's Response, Docket Entry No. 27, ¶¶ 5-9.

[8] Oral and Videotaped Deposition of Darrlene Jeffcoat, Exhibit F to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 12-15.

verbal altercation between Wolf and Comeaux; (2) the altercation escalated to a physical altercation during which Comeaux threatened to strike Wolf with a hammer; (3) Flournoy intervened to break up the altercation; (4) Flournoy hit Comeaux and knocked him to the ground; (5) Flournoy restrained Comeaux on the ground; (6) Flournoy's actions caused Comeaux to suffer a cut above one of his eyes that required stitches; and (7) Flournoy helped Comeaux clean the cut that Comeaux sustained above his eye.[9]

## B. Investigation

Wolf called his area supervisor, Boyd Gipson, to report the altercation. Gipson initiated an investigation. Gipson asked each of the three Campbell employees who were involved in the altercation to write a statement: Wolf,[10] Comeaux,[11] and Flournoy.[12]

---

[9] Flournoy Affidavit, Exhibit A to Flournoy Response, Docket Entry No. 27, ¶¶ 8-9. See also Flournoy Deposition, Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 152-160, 166-172 (describing the altercation and acknowledging that his actions injured Comeaux). Campbell contends that a conflict in the evidence exists as to whether Flournoy restrained Comeaux until he released the hammer or whether Flournoy restrained Comeaux to prevent him from getting the hammer but acknowledges that "this fact is not material to whether Campbell is entitled to summary judgment on Flournoy's claims." Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 5 & n.6.

[10] Exhibit E-1 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[11] Exhibit E-2 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[12] Exhibit E-3 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

Written statements about the altercation were also prepared by Garibaldi -- a person who witnessed the altercation[13] -- and by Gipson.[14] The written statements were provided to Darrlene Jeffcoat, Campbell's Human Resources Manager, and Jeffcoat provided the written statements to Baker and to Scott Ducoff, Campbell's President.[15] After consulting with Jeffcoat, Baker decided to terminate Flournoy and Comeaux, but not Wolf.[16] On January 9, 2008, Jeffcoat informed Flournoy that he was being terminated because of his actions during the altercation.[17]

**C.   EEOC Charge of Race Discrimination**

Flournoy filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 23, 2008.[18] The EEOC issued Flournoy a right-to-sue letter on August 14, 2009.[19]

---

[13]Exhibit E-4 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[14]Exhibit E-5 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[15]Oral and Videotaped Deposition of Darrlene Jeffcoat, Exhibit F to Defendant's Motion for Summary Judgment, Docket Entry No. 27, pp. 12-13.

[16]Affidavit of Phillip Baker, Exhibit H to Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 2, ¶ 5.

[17]Oral and Videotaped Deposition of Darrlene Jeffcoat, Exhibit F to Defendant's Motion for Summary Judgment, Docket Entry No. 27, pp. 12-13.

[18]Exhibit A-2 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

[19]Exhibit A-3 to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

Flournoy filed this action for race discrimination in employment on December 4, 2009.[20]

### III.  Analysis

Flournoy has asserted claims for race-based employment discrimination under Title VII and § 1981.

**A.   Title VII**

1.   Applicable Law

Title VII prohibits employers from taking adverse employment actions against employees on the basis of race.  See Foley v. University of Houston System, 355 F.3d 333, 339 (5th Cir. 2003). A private right of action exists under Title VII for violations involving intentional discrimination.  See Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004) ("The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff.").  Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on intentional discrimination.  See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997).  The issue is not whether the defendant made erroneous decisions, but whether the defendant's decisions were made with discriminatory intent.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Plaintiffs in Title VII cases may rely on either direct or

---

[20]Plaintiff's Original Complaint, Docket Entry No. 1.

circumstantial evidence, or both, to prove their claims. See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005).

(a) Direct Evidence

Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." Fabela v. Socorro Independent School District, 329 F.3d 409, 415 (5th Cir. 2003), overturned on other grounds by Smith v. Xerox Corp., 602 F.3d 320, 328 (5th Cir. 2010) (noting that direct evidence includes "any statement or document which shows on its face that an improper criterion served as a basis, not necessarily a sole basis, for an adverse employment action"). The plaintiff in this case has not presented any direct evidence establishing that Campbell terminated him because of his race. In the absence of direct evidence, a plaintiff can overcome a defendant's motion for summary judgment with circumstantial evidence, using the burden-shifting analysis stated in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

(b) Circumstantial Evidence

The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a prima facie case. Id. at 1824. Once the plaintiff establishes a prima facie case, a presumption of discrimination arises; and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue. Id. If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's prima

-7-

facie case disappears, and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination. A plaintiff may meet this burden by producing evidence tending to show that the reason offered by the defendant is not true but, instead, is a pretext for discrimination. Id. at 1825. In Reeves v. Sanderson Plumbing, Inc., 120 S.Ct. 2097 (2000), the Supreme Court clarified the McDonnell Douglas analysis by explaining that a plaintiff need not produce evidence of both pretext and actual discriminatory intent to create a fact issue on a discrimination claim but that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 2109.

2. Analysis

Flournoy argues that his termination was the product of race discrimination. Campbell argues that it is entitled to summary judgment because Flournoy cannot establish a prima facie case of race discrimination and cannot establish that Campbell's legitimate, non-discriminatory reason for terminating Flournoy's employment was a pretext for race discrimination.

(a) Flournoy Has Established a Prima Facie Case

Citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995), Campbell argues that Flournoy is unable to establish a prima facie case of race discrimination.[21]

---

[21]Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 11.

> In work-rule violation cases, a Title VII plaintiff may establish a *prima facie* case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly."

Mayberry, 55 F.3d at 190 (quoting Green, 612 F.2d at 968). Campbell argues that Flournoy is unable to establish a prima facie case because he cannot show either that he did not violate the work-rule, i.e., Campbell's Anti-Workplace Violence policy, or that an employee of a different race who engaged in similar acts was treated differently under nearly identical circumstances.[22] Campbell's Anti-Workplace Violence policy provides:

> The Company expressly prohibits any and all acts or threats of violence by any employee against any other employee. Further, the Company expressly prohibits any acts or threats of violence by or against the Company's employees, customers, vendors or other visitors while they are engaged in business with or on behalf of the Company, either on or off the Company's premises.
>
> As used in this policy, violence is defined to include the following:
>
> > **PHYSICAL ATTACK** is an unwanted or hostile contact, such as hitting, fighting, pushing, shoving or throwing objects.
> >
> > **THREAT** is stating a present or future intention to cause physical or mental harm. Any expression of intent to cause physical or mental harm is considered to be a threat.
>
> . . .
>
> If you experience or witness any act, conduct, behavior or communication that you believe is violent or a threat of violence, you must immediately contact your supervisor or the Director of Human Resources. Any supervisor who

---

[22] Id. at 14.

receives a complaint of violence, threats, harassment or property damage or who has reason to suspect that these acts or behaviors are occurring must notify the Director of Human Resources. Upon being informed of an allegation of violence, threat or harassment, the Company will investigate the matter. Upon the conclusion of the investigation, the Company will determine how to respond. If the Company determines that misconduct occurred, the Company will discipline the employee, up to and including termination. The Company will not retaliate against an employee for reporting violence, threats of violence, harassment or property damage.[23]

Flournoy argues that he is able to establish a prima facie case because he acted in self-defense and, therefore, did not violate Campbell's Anti-Workplace Violence policy, and because even if he did violate Campbell's Anti-Workplace Violence policy, he was treated differently than similarly situated employees of a different race. As evidence that actions taken in self-defense do not violate Campbell's Anti-Workplace Violence policy, Flournoy cites the deposition testimony of Baker, Ducoff, and Gipson. Baker testified that actions taken in self-defense probably would not be a violation of Campbell's Anti-Workplace Violence policy and that Campbell would expect someone to intervene when serious injury is threatened.[24] Ducoff also testified that an employee would have the right to defend himself if threatened with a hammer.[25] Gipson

---

[23]Campbell Concrete & Materials, L.P. Employee Manual, Exhibit E-6 to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 7-8.

[24]Deposition of Phillip Baker (Baker Deposition), Exhibit C to Flournoy's Response, Docket Entry No. 27, pp. 23-25.

[25]Deposition of Scott Ducoff, Exhibit D to Plaintiff's Response, p. 22.

testified that he did not believe that actions taken in self-defense would be included in the policy's definition of physical attack.[26]  As evidence that his actions were taken in self-defense, Flournoy cites his own deposition testimony as well as that of Teddy Wolf.  Wolf stated that Comeaux was "in my face pointing his finger & drew back his hammer as though he was going to strike me so I shoved him back to get some distance about that time Dan came up Phillip hit Dan in the chest then drew his hammer back to hit Dan so he defended himself."[27]  Because the evidence cited by Flournoy shows that Campbell's Anti-Workplace Violence policy may not be violated by actions taken in self-defense, and that Flournoy may have been acting in self-defense when he struck Comeaux, the court concludes that Flournoy has established a prima facie case that he did not violate Campbell's Anti-Workplace Violence policy.

As evidence that he was treated differently than an employee of a different race, Flournoy cites evidence showing that Wolf -- a Caucasian -- was involved in the same altercation but was not terminated.  Campbell argues that the different treatment accorded to Wolf does not help Flournoy establish a prima facie case because Wolf and Flournoy were not similarly situated.  Campbell explains that "the undisputed facts conclusively show that Flournoy's and

---

[26]Deposition of James Boyd Gipson, Exhibit E to Plaintiff's Response, pp. 44-45 and 48.

[27]Statement of Teddy Wolf, Exhibit F to Plaintiff's Response, Docket Entry No. 27,

-11-

Wolf's actions were not of a comparable seriousness."[28] It is undisputed that Wolf and Flournoy both engaged in the same altercation. It is also undisputed that Campbell determined that both Wolf and Flournoy violated the company's Anti-Workplace Violence policy while engaged in that altercation. Nevertheless, Flournoy was terminated while Wolf was not terminated. Because the undisputed evidence shows that Wolf, a Caucasian employee, violated Campbell's Anti-Workplace Violence policy while engaged in the same altercation as Flournoy but that Wolf's employment was not terminated, the court concludes that Flournoy has satisfied his burden of establishing a prima facie case because the evidence that he has cited shows that Caucasian employees who engaged in similar acts were not punished similarly.

> (b)   Campbell Has Stated Non-Discriminatory Reasons

Campbell argues that after reviewing the written statements made about the altercation Baker, in consultation with Jeffcoat, decided to terminate Flournoy but not to terminate Wolf because Baker believed that Flournoy beat Comeaux and caused him injuries while Wolf only pushed Comeaux and did not cause him any injuries.[29] Baker explained the reasons for his decision to terminate Flournoy's employment but not Wolf's employment as follows:

---

[28] Id.

[29] Id. at 14-15, 20-21.

3. Dan Flournoy was an employee of CC&M at the time I served as Vice President.  In early January 2008, I recall meeting with Scott Ducoff, the President of CC&M, and Darrlene Jeffcoat, the Human Resources Manager of CC&M, regarding a fight that occurred at the Arcola plant between Mr. Flournoy and another employee, Phillip Comeaux.  The meeting took place at CC&M's headquarters in Cleveland, Texas.  I recall reviewing written employee statements regarding the matter, and I also recall that Ms. Jeffcoat described to us her understanding of the fight.

4. While I do not recall at this time all of the information that was brought to my attention about the fight, I do recall receiving enough information that led me to conclude that Mr. Flournoy used too much force against Mr. Comeaux during the incident. Based on the information I received, I believed that Mr. Flournoy knocked Mr. Comeaux to the ground, got on top of him, and beat Mr. Comeaux with his fists.  I further believed that Mr. Flournoy's beating of Mr. Comeaux resulted in Mr. Comeaux being injured, and I did not believe that Mr. Flournoy's actions were in self-defense.

5. After considering the matter, I decided to terminate Mr. Flournoy's employment with CC&M based on the facts as I understood them.  I do not recall the extent of Mr. Ducoff's involvement in the decision-making process.  I do recall Ms. Jeffcoat recommending that Mr. Flournoy be terminated for his actions.

6. CC&M had an anti-workplace violence policy as of the date of the fight.  Based on the language in the policy, I believe that Teddy Wolf violated the policy because it is my understanding that Mr. Wolf pushed Mr. Comeaux during the incident in January 2008.  I also believe that Mr. Flournoy violated the policy because he beat Mr. Comeaux during the incident.  Even though both of these individuals violated the policy, I believed at the time I terminated Mr. Flournoy that his actions were more severe than Mr. Wolf's because Mr. Flournoy beat Mr. Comeaux and caused him injuries.  Mr. Wolf only pushed Mr. Comeaux and did not cause Mr. Comeaux any injuries.

>  7. It is my understanding that Mr. Flournoy has filed a lawsuit claiming that his termination from CC&M was based on his race — African-American. Mr. Flournoy is incorrect. I did not consider Mr. Flournoy's race when deciding to terminate his employment from the company. Instead, I decided to terminate Mr. Flournoy because I believed that Mr. Flournoy used too much force against Mr. Comeaux during the incident. I did not terminate Mr. Wolf's employment with the company because he did not engage in the same severe conduct that Mr. Flournoy engaged in toward Mr. Comeaux. Mr. Flournoy beat Mr. Comeaux — Mr. Wolf did not beat Mr. Comeaux.[30]

Campbell has articulated a legitimate, non-discriminatory reason for Flournoy's termination. Therefore, under the McDonnell Douglas burden-shifting analysis the burden passes to Flournoy to show that Campbell's stated reasons for his termination are pretextual and that race was a motivating factor in Campbell's decision to terminate his employment.

(c) Flournoy Has Not Raised a Fact Issue as to Pretext

A plaintiff may establish pretext by showing either that the proffered reason for his termination is not true or is unworthy of credence, or that defendant's decision to terminate his employment was more likely motivated by racial animus. In response to Campbell's legitimate, nondiscriminatory reason for terminating his employment, Flournoy essentially reasserts his prima facie case, i.e., that Campbell's stated reason for his termination is not true

---

[30]Affidavit of Phillip Baker, Exhibit H to Defendant's Motion for Summary Judgment, Docket Entry No. 21, ¶¶ 3-7.

because he did not violate Campbell's Anti-Workplace Violence policy since he was acting in self-defense, and that Campbell's stated reason was a pretext for race discrimination because Campbell treated Wolf and others outside of Flournoy's protected class more favorably.

Flournoy has cited evidence capable of raising a fact issue as to whether he acted in self-defense and whether an act of self-defense is excepted from Campbell's Anti-Workplace Violence policy. Flournoy seizes on these fact issues to argue that Campbell's nondiscriminatory reason for terminating him was pretextual. But "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry, 55 F.3d at 1091. While Flournoy contends that Campbell's interpretation of the Anti-Workplace Violence policy is erroneous, he has not offered evidence from which a reasonable fact-finder could conclude that his response to Comeaux's threat was not excessive and was not more severe than Wolf's response. As Baker explained, "[e]ven though both of these individuals violated the policy . . . Mr. Flournoy['s] actions were more severe than Mr. Wolf's because Mr. Flournoy beat Mr. Comeaux and caused him injuries. Mr. Wolf only pushed Mr. Comeaux and did not cause Mr. Comeaux any injuries."[31] Moreover, Flournoy presented no evidence from which a reasonable fact-finder could infer that

---

[31] Id. ¶ 6.

racial animus motivated Baker's decision to terminate his employment.

Flournoy's deposition testimony demonstrates that his race discrimination claim is based not on any factual evidence but, instead, solely on his subjective belief.

> Q. Okay. Do you have any information that you could share with me today that supports your belief that you were terminated because of your race and that Mr. Baker was involved in that decision?
>
> A. No.[32]
>
> . . .
>
> Q. Okay. And you can't give me any other information to support your belief, other than that you believe it?
>
> A. I believe in Jesus, but I can't give you a reason why. I believe that that's the reason that I was terminated, is because of my race.[33]
>
> . . .
>
> Q. Why?
>
> A. I believe that that's why I was terminated, and that's it.[34]

In the absence of evidence that would allow a reasonable fact-finder to conclude that racial animus motivated Campbell's decision to terminate Flournoy's employment, Flournoy has failed to satisfy his burden of establishing that Campbell's stated reason for

---

[32] Flournoy Deposition, Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 174.

[33] Id. at 196.

[34] Id. at 197.

terminating his employment, *i.e.*, that Flournoy violated the company's Anti-Workplace Violence policy by using excessive force in response to the threat posed by Comeaux, was not the true reason but, instead, a pretext for unlawful race discrimination. See Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir.), cert. denied, 101 S.Ct. 227 (1980).

In Green, 612 F.2d at 968, the Fifth Circuit concluded that an employer did not violate Title VII by firing an African-American employee for fighting but only suspending a Caucasian employee involved in the same fight when the evidence demonstrated that the African-American employee had been the aggressor armed with a dangerous tool while the Caucasian employee had not been armed. Undisputed evidence in this case shows that Campbell investigated the altercation between Comeaux, Wolf, and Flournoy, and that the evidence adduced during that investigation led Baker to conclude that Flournoy's response to Comeaux's threat was excessive because it resulted in injuries to Comeaux that required medical attention, but that Wolf's response to the same threat was not excessive because Wolf's response did not cause Comeaux any injury. Based on this undisputed evidence, Baker made a business decision to terminate Flournoy but not to terminate Wolf. Baker explained that his decision was based on his belief that Flournoy's response to the threat posed by Comeaux was more severe than Wolf's response to the same threat. Baker's decision was neither implausible nor inconsistent with Campbell's Anti-Workplace Violence policy.

Because Title VII is aimed at redressing intentional discrimination and is not aimed at redressing errors of perception and managerial judgment, this court will not second guess Baker's business decision.  See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) ("[employment anti-discrimination laws are] not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers").  Because Flournoy has failed to produce any evidence from which a reasonable fact-finder could conclude that Campbell's legitimate, nondiscriminatory reason for treating Wolf more favorably than Flournoy was not the true reason but, instead, a pretext for race discrimination, Flournoy has failed to raise a genuine issue of material fact for trial.

(d)  Conclusions as to Title VII Claim

For the reasons explained above, the court concludes that Flournoy has established a prima facie case of race discrimination but that Flournoy has failed to raise a genuine issue of material fact for trial because he has not presented any evidence from which a reasonable fact-finder could conclude that Campbell's stated reason for his termination was not the true reason but, instead, a pretext for race discrimination.

3.  Section 1981

The § 1981 claim for race-based employment discrimination asserted in Flournoy's Original Complaint is based on the same

-18-

factual allegations as is his Title VII claim for race-based employment discrimination. The Fifth Circuit has stated that race discrimination claims in the employment context brought under § 1981 are analyzed in the same manner as are claims for race discrimination under Title VII. The differences between the two statutes concern their respective statutes of limitation and the requirement under Title VII that plaintiffs exhaust administrative remedies. See <u>Jones v. Robinson Property Group, L.P.</u>, 427 F.3d 987, 992 (5th Cir. 2005). Accordingly, the court concludes that Campbell is entitled to summary judgment on Flournoy's § 1981 claim for the same reasons that Campbell is entitled to summary judgment on Flournoy's Title VII claim.

## IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that Campbell is entitled to summary judgment on the claims for race discrimination in employment that Flournoy has asserted under Title VII and § 1981. Therefore, Defendant's Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED.** Defendant's Objections to Plaintiff's Summary Judgment Evidence (Docket Entry No. 31) are **MOOT.**

**SIGNED** at Houston, Texas, on this 22nd day of February, 2011.

_____<br>
SIM LAKE<br>
UNITED STATES DISTRICT JUDGE